UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL BIRKENBACH,

    Plaintiff,                                        Case No. 13–14607
                                                    Honorable Thomas L. Ludington

v.

NATIONAL GYPSUM
COMPANY, and AMERICAN
STEAMSHIP COMPANY,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT NATIONAL GYPSUM COMPANY'S MOTION TO DISMISS**

Plaintiff Paul Birkenbach (Birkenbach) originally brought this action against Defendants National Gypsum Company (NGC) and American Steamship Company (ASC), alleging that they negligently caused the injuries he sustained while working for NGC. Birkenbach then filed an amended complaint alleging claims under the Longshore and Harbor Workers' Compensation Act (LHWCA), maritime common law, and Michigan state law. On April 21, 2014, NGC filed a motion to dismiss, arguing that Birkenbach's exclusive remedy is provided by the LHWCA. NGC is correct: Birkenbach's exclusive remedy is provided by the LHWCA; his common law and state law claims against NGC will be dismissed.

**I**

**A**

NGC operates a vessel-loading facility, including a loading dock, on Tawas Bay in Iosco County, Michigan. NGC employed Birkenbach as a millwright at this loading facility; his

responsibilities included controlling the transfer of gypsum onto the *Sam Laud*, a vessel owned by ASC.

On October 22, 2012, while Birkenbach was on the job, a mate on the *Sam Laud* requested that Birkenbach and his supervisor assist with the ship's 1.25-inch steel mooring cables while the ship was departing from the loading dock. Handling mooring cables can be hazardous work, and the *Sam Laud* had crew aboard who were specifically trained to do so. In fact, recognizing the risk for untrained personnel handling mooring cables, the crew had previously entered into a collective bargaining agreement with their seamen's union that prohibited untrained ship personnel from handling mooring cables. Birkenbach had received no training concerning the proper handling of mooring cables.

Nevertheless, as the *Sam Laud* readied to make way, Birkenbach and his supervisor attempted to lift the heavy eye of a 1.25-inch mooring cable off of an NGC dock piling (to untether the ship and free it for open water). But, as Birkenbach handled the cable, a crewmember on the *Sam Laud* (stationed at the winch controls) activated the winch, which heaved on the cable. Tension was placed on the line before Birkenbach cleared his hands, and they were crushed when his fingers were caught between the cable and the piling.

One of Birkenbach's fingers was amputated in early 2014; doctors anticipate others will be amputated in the future. Importantly, at least according to the parties' briefs, there was no history of prior injury—on NGC's dock or on the *Sam Laud*—related to the use of mooring cables.

**B**

On November 11, 2013, Birkenbach filed a complaint against NGC and ASC, asserting maritime tort claims under 33 U.S.C. § 901 and seeking a judgment in excess of $100,000. He

further claims that NGC did not secure payment for his insurance claim and so NGC has waived the available immunity under the LHWCA. ASC filed an answer on February 26, 2014, in which it denied Birkenbach's allegations. ASC asserts that it has no duty to ensure NGC employees are properly trained in handling mooring cables. On March 4, 2014, NGC filed an answer as well as a motion to dismiss for failure to state a claim upon which relief can be granted, or alternatively, a motion for summary judgment under Federal Rule of Civil Procedure 56.

On March 14, 2014, Birkenbach filed an amended complaint against NGC and ASC as provided by Federal Rule of Civil Procedure 15. *See* Fed. R. Civ. P. 15(a)(1)(B). In the amended complaint, Birkenbach reaffirms his claim against ASC, adding that if ASC requested anyone other than a *Sam Laud* crewmember to handle mooring cables, then ASC owed a duty to that person to ensure he or she was trained to handle the task and supervised while doing so. Birkenbach also reaffirms his claim against NGC, arguing that NGC waived its immunity from suit by failing to pay compensation (as required by 33 U.S.C. § 904) and so it is liable for his maritime tort action. In a new, additional count under Michigan law, Birkenbach claims that NGC had actual knowledge that his injuries were certain to occur because of the fact that he was not trained for the task in question and he was performing a job that constitutes a "continuously operative dangerous condition." Pl.'s Resp. 5, ECF No. 23. According to Birkenbach, because his injury was certain to occur, NGC is liable under a Michigan intentional tort statute (Mich. Comp. Laws § 418.131).

On April 4, 2014, NGC answered Birkenbach's amended complaint, raising a number of affirmative defenses, including a contention that Birkenbach's amended complaint fails to state a cause of action. Def.'s Answer Am. Compl. 7, ECF No. 17. Over two weeks later, on April 21,

2014, NGC filed a second motion to dismiss; it alleges that Birkenbach's Michigan state law claim falls within the LHWCA's coverage for benefits and should be precluded by the exclusivity-of-remedy provision of the Act. Moreover, NGC argues that it did maintain insurance to pay Birkenbach's insurance claim, and accordingly his maritime common law claim is also precluded by the LHWCA.

Birkenbach responded to NGC's motion and initially contends that NGC waived its right to raise a Rule 12(b) defense (such as failure to state a cause of action) because that defense was not presented in NGC's answer to the amended complaint. Pl.'s Resp. 2. Birkenbach also argues that because he has stated a claim under Mich. Comp. Laws § 418.131, he necessarily has pled a sufficient intentional tort to escape the exclusivity provision of the LHWCA. Finally, Birkenbach contends that a motion to dismiss is premature because it does not allow for appropriate discovery to determine whether his claims for benefits have been paid (in accordance with NGC's requirement under the LHWCA). *Id.*

In a short reply, NGC claims that its Rule 12(b) defense was not waived because it was included in the original motion to dismiss, which was still pending at the time of its answer to the amended complaint. Def.'s Reply 2, ECF No. 24. Additionally, NGC argues that § 418.131 is preempted by the rules governing the LHWCA. *Id.* It contends that the LHWCA does not permit tort actions against employers for an alleged intentional tort unless there was a "specific intent" or desire on the part of the employer that the injury occur; a "specific intent" that is lacking here. *Id.* at 4. Therefore, according to NGC, the 12(b)(6) motion is warranted because Birkenbach's complaint fails to allege plausible facts to support his claims.

**II**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. *Twombly*, 550 U.S. at 570.

**III**

**A**

Contrary to Birkenbach's argument, NGC has not waived its Rule 12(b)(6) defense, although for a different reason. NGC claims that it did not have to raise its failure to state a claim defense in its answer to the amended complaint because its first 12(b)(6) motion was still pending at that time. This argument is flawed. When a party files an amended pleading, the amended pleading supersedes the preceding pleadings. *Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008) (citing *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)). "[T]he original pleading no longer performs any function in the case and any subsequent motions made by an opposing party should be directed at the amended pleading." *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2010)). When an amended pleading has been filed, it is appropriate to deny as moot any previous motions directed

at the original. *See*, *e.g.*, *Tuttobene v. Assurance Group, Inc*., 3:10-0978, 2012 WL 2871848, at *1 n.1 (M.D. Tenn. July 12, 2012) (citing *Gibson v. Mortgage Elec. Registration Sys.*, *Inc.*, 2012 WL 1601313, at *9 (W.D. Tenn. May 2, 2012) ("Courts in this Circuit and others will deny as moot Rule 12 motions to test the sufficiency of the pleadings after a plaintiff subsequently files an amended complaint."); *see also Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003) ("Because the original complaint now is superseded by the amended complaint, the court denies without prejudice all pending motions pertaining to the original complaint."); *Rankin v. Advanced Employment Services*, *Inc.*, 3:08CV586, 2009 WL 1472830 (W.D.N.C. May 21, 2009) (citation omitted) ("[I]t is well settled that a timely-filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot."). It follows that NGC's original motion to dismiss was mooted by Birkenbach's amended complaint, and therefore it cannot preserve the Rule 12(b)(6) defense.

However, Federal Rule of Civil Procedure 12(h)(2) preserves the failure to state a claim defense from waiver. Rule 12(h)(2) provides that a Rule 12(b)(6) defense may be asserted as late as during trial. *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."); *see also Swart v. Pitcher*, 9 F.3d 109 (6th Cir. 1993) (stating that a party may raise a defense of failure to state a claim upon which relief can be granted, even though not raised in an earlier motion to dismiss in one of three ways: (1) in an answer, (2) in a motion for judgment on the pleadings, or (3) at trial on the merits).

Additionally, even if a party must preserve a Rule 12(b)(6) defense by filing a corresponding motion before its answer, "courts have allowed untimely motions if the defense has been previously included in the answer." 5A Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 1361 (1990). In its answer, NGC indicated that Birkenbach's complaint "fail[s] to state cause of action." Def.'s Answer Am. Compl. 7 ¶ 2, ECF No. 17. So the defense was not waived. *See Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 902 (D.C. Ohio 1998); *see also* Wright & Miller, *Federal Practice & Procedure*, § 1361 (showing that courts interpreting Rule 12(b)(6) have considered post-answer motions to dismiss as long as the movant raised the Rule 12(b)(6) defense in the answer). Because NGC has not waived its Rule 12(b)(6) defense, either because it cannot be waived or because the defense was asserted in NGC's answer, its motion to dismiss will be considered.

**B**

Birkenbach's first claim against NGC is that it negligently caused his injuries in violation of maritime common law. *See* Pl.'s Am. Compl. ¶ 28, ECF No. 13. Although the LHWCA generally provides the exclusive remedy for covered employees like Birkenbach, he argues that NGC failed to secure compensation as required by the Act and his common law claim is thus not precluded. But because NGC did secure compensation, this claim will be dismissed.

The LHWCA was enacted to remedy state worker compensation schemes that did not supply remedies to longshoreman who were injured or killed while working on navigable waters. Indeed, courts now accept that federal jurisdiction coexists with state compensation laws. *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715 (1980). As noted above, payment of compensation under the LHWCA is the exclusive remedy for covered workers against their employers, with a few limited exceptions. The application of one exception, outlined at 33 U.S.C. § 905(a), is at issue here.

Under § 905(a), "[t]he liability of an employer prescribed in [the LHWCA] shall be exclusive and in place of all other liability of such employer to the employee . . . *except that if an*

*employer fails to secure payment of compensation as required*" by the Act, an injured employee may elect to "maintain an action at law or in admiralty for damages on account of such injury . . . ." *Id.* (emphasis added). Birkenbach contends that NGC failed to secure compensation for benefits as required by § 905(a) and therefore the LHWCA is not his only remedy.

NGC claims that it has secured compensation through ACE American Insurance Company (as evidenced by Pl.'s Resp. Ex. A). According to Birkenbach, however, NGC's showing that it maintains coverage is not sufficient to demonstrate that it "secure[d] payment" and he must be able to contest the claim through additional discovery.

While the LHWCA requires an employer to secure payment of compensation, the relevant authority explains this requirement is satisfied when an employer "*has the potential*" to pay compensation payments if and when required by the Act. *In re Natures Way Marine*, *LLC*, No. 12-00390, 2013 WL 6157978, at *10 (S.D. Ala. Nov. 25, 2013) (emphasis added). The LHWCA does not place any additional burden on the employer to immediately and actually make compensation payments to injured employees. *Id.* In other words, to meet the requirement of § 905(a), NGC must *secure* payment, not actually *make* payment of benefits. *Id.*

Here, NGC's evidence that it has obtained insurance with ACE American Insurance Company—which was not contradicted by Birkenbach in any way—amounts to "securing payment" of compensation under the LHWCA. Because NGC discharged its statutory obligation of maintaining insurance coverage through an insurance carrier, Birkenbach's maritime common law claim is precluded by the LHWCA.

IV

Birkenbach's second claim against NGC implicates a second exception to the LHWCA exclusivity provision. He argues that NGC committed an intentional tort in violation of

Michigan law. The overwhelming weight of authority establishes that, under the LHWCA, an employer's liability "cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." 2A A. Larson, *Workmen's Compensation Law* § 68.13 at 13–5, and cases cited n.11 (1976). Thus, the LHWCA is an employee's exclusive remedy short of an employer's specific intent to injure. *Id*. Birkenbach alleges that NGC's willful and wanton misconduct (in not providing training and/or preventing employees from doing a clearly dangerous activity) constitutes an intentional tort and thus, imposes liability outside the scope of the LHWCA. His argument, however, is not persuasive, and his state law cause of action will be dismissed.

Several courts have adopted intentional tort exceptions to the exclusive remedy provisions contained in various workers' compensation statutes like the LHWCA. These exceptions prevent employers from arguing that employee's injuries—intentionally inflicted—were merely accidental and therefore within the exclusivity terms of the acts. *See* Larson, § 69.10 at 13–41 to 13–42. Courts addressing intentional tort exceptions, however, have held that "even egregious or reckless employer conduct that falls short of demonstrating a deliberate intent to injure will not permit an employee to overcome the exclusivity provision[s]" contained in workers' compensation statutes. *Davis v. Rockwell Intern. Corp.*, 596 F. Supp. 780, 785 (N.D. Ohio 1984).

For example, in *Johnson v. Odeco Oil & Gas Co., Inc.*, the plaintiff—a maritime employee covered by the LHWCA—alleged that the willful and wanton misconduct of his employer (not evacuating employees before an impending hurricane) constituted an intentional tort and thus fell outside the scope of the LHWCA. 679 F. Supp. 604, 606 (E.D. La. 1987). But

because the plaintiff did not show that his employer deliberately intended to injure him, the plaintiff's exclusive remedy was under the LHWCA. *Id.* at 607.

Likewise, in *Houston v. Bechtel Associates Professional Corp., D.C.*, the D.C. District Court considered a safety inspector's claim that his employer willfully, wantonly, and recklessly exposed him to unreasonably high levels of silica dust, resulting in injury. 522 F. Supp. 1094 (D.D.C. 1981). Consistent with the standards explained above, the court reasoned that "[k]nowledge and appreciation of a risk is not the same as the 'intent' to cause an injury." *Id.* at 1096. Thus, the employee's claim did not escape the exclusivity clause of the applicable workers' compensation act.

The conduct Birkenbach complains of does not fall within the intentional tort exception of the LHWCA because willful and wanton conduct, short of a deliberate intent to injure, is within the exclusive reach of the Act. *See Johnson*, 679 F. Supp. at 606. Therefore, Birkenbach's exclusive remedy is under the LHWCA—his state law claim is barred.

Birkenbach nevertheless argues that his intentional tort claim under Mich. Comp. Laws § 418.131 is not precluded by the LHWCA. The main thrust of Birkenbach's argument is that because he has stated a claim under a Michigan intentional tort statute (§ 418.131), he necessarily has pled a sufficient intentional tort to escape the LHWCA. But even if it were true that satisfying the § 418.131 intentional tort exception automatically satisfies the same provision in the LHWCA, Birkenbach has not done so here. Although Birkenbach does not claim that NGC intentionally harmed him, he argues that NGC knew he was inexperienced and could become involved with a "continuously dangerous" activity, and therefore, the requirements of the § 418.131 intentional tort exception are staisfied. Birkenbach's position simply does not withstand scrutiny.

The Michigan Supreme Court decided in *Travis* that an employer must have done something more than fail to protect an employee from an appreciable risk of harm in order to meet the intentional tort exception in § 418.131(1). *Travis v. Dreis and Krump Manufacturing Co.*, 551 N.W.2d 132, 143 (1996). In *Travis*, an employee—within the scope of her employment—was injured when a machine malfunctioned. Though the employee's task was clearly dangerous, there was no history of machine malfunction or injury known to the employer. The Court found that § 418.131(1) requires an "extremely high standard" of proving that an injury was "certain to occur" to impose liability. *Travis*, 551 N.W.2d at 143. This standard requires more than a showing that the employer had knowledge of a dangerous or risky condition. *Id.*

Birkenbach argues that this case should follow *Golec,* a companion case decided by the Michigan Supreme Court at the same time as *Travis* that considered intentional tort exceptions for claims against employers. *Golec v. Metal Exchange Corp.,* 528 N.W.2d 756 (1995). The employee in *Golec* was loading scrap aluminum into a furnace when a small explosion occurred, resulting in minor injury. Notice of the explosion was passed along to the employee's supervisor, but the employee was ultimately ordered back to continue loading scrap into the furnace. Subsequently, a larger explosion occurred, which showered the employee with molten aluminum, causing severe injury. The Court found that the employer was aware of a "specific danger" prior to the explosion that caused the employee's severe injuries: the similar explosion that had occurred only that morning. The court reasoned that ordering the employee back to the same dangerous activity demonstrated that the employer knew an injury was certain to occur, and thus constituted an intentional tort. Birkenbach contends that the circumstances here are more like *Golec* than *Travis*.

But the facts do not support Birkenbach's position. Indeed, unlike *Golec,* NGC had no knowledge of a "specific danger"—no employee had ever been injured performing Birkenbach's task (although it was admittedly dangerous). Much like *Travis*, which also involved an inexperienced worker performing a dangerous task, NGC had no reason to believe an injury was "certain to occur." Though NGC may have acted with greater caution to prevent the injury, carelessness does not establish intent. *See May v. Jefferson Smurfit Corp. (U.S.)*, 945 F. Supp. 1076, 1079 (E.D. Mich. 1996) (holding that an employer did not have knowledge that injury was certain to occur even though employee did not have any formal training for a dangerous activity resulting in injury).

Birkenbach has not pled sufficient facts to establish the requisite certainty that injury would occur. His claim would not qualify for the intentional tort exception in § 418.131(1) and it does not satisfy the same provision in the LHWCA. His Michigan state law cause of action is precluded by the LHWCA and will be dismissed.

**V**

Accordingly, it is **ORDERED** that NGC's motion to dismiss, ECF No. 20, is **GRANTED**.

It is further **ORDERED** that Birkenbach's First Amended Complaint, ECF No. 13—as it applies to NGC—is **DISMISSED** with prejudice.

Dated: June 30, 2014                                              s/Thomas L. Ludington
                                                                  THOMAS L. LUDINGTON
                                                                  United States District Judge

> PROOF OF SERVICE
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 30, 2014.
>
> s/Tracy A. Jacobs
> TRACY A. JACOBS